UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Kelsey and Petty
Argued at Richmond, Virginia


CHRISTOPHER E. COTTRELL

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0795-13-2          CHIEF JUDGE WALTER S. FELTON, JR.
                                                    APRIL 29, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SUSSEX COUNTY
W. Allan Sharrett, Judge

Wallace W. Brittle, Jr. (Railey & Railey, P.C., on brief), for
appellant.

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Christopher E. Cottrell (appellant) was convicted, following a jury trial in the Circuit Court

of Sussex County (trial court), of assault and battery of a corrections officer, in violation of Code

§ 18.2-57.[1]  Appellant was also convicted of assault and battery of a corrections officer (warden),

in violation of Code § 18.2-57.[2]  On appeal, appellant asserts that the trial court erred in joining his

two assault and battery charges for trial as they did not arise from a common scheme or plan.  He

also asserts that the trial court erred in not striking the Commonwealth's evidence as to the felony

component of the assault and battery of Officer Jones.  He argues that the evidence showed that,

pursuant to Code § 53.1-1, Officer Jones did not meet the statutory definition of a correctional

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] This charge stems from the assault and battery of Correctional Officer Krystal Jones.

[2] Appellant's assignment of error specifically relating to his assault and battery of a corrections officer (warden) conviction was denied by a per curiam order dated October 21, 2013, and is not before this Court on appeal.

officer as stated in the indictment and the finding by the jury. For the following reasons, we affirm appellant's convictions.

## I. BACKGROUND

On July 1, 2012, Correctional Officer Jones was working, in uniform, at Sussex I State Prison. She was working in the control booth of Housing Unit 2 where she could both control the cell doors and monitor two of the housing unit's pods, "Charlie" and "Delta." Each pod consists of two floors. The control booth is elevated so that it is between the two floors. The control booth has barred windows that can be opened. Officer Jones was alone in the booth. Correctional Officer Marvin Harvell was working as the floor officer for "Charlie" pod. Appellant was an inmate housed in "Charlie" pod. Both Officers Jones and Harvell knew appellant.

Around noon that day, the officers were preparing to send the inmates to be locked into their cells. At Officer Harvell's direction, Officer Jones opened the cell doors from her position in the control booth. Officer Harvell directed the inmates to go to their cells. When Officer Jones heard an inmate call her name, she felt and smelled feces hit her in the control booth. She pushed her chair back from the desk at which she was seated. As a result, she was not hit by a second cup of feces thrown at her.

Officer Jones looked in the direction from which the feces had come and saw appellant, near the control booth, walking away from her. Officer Jones told Officer Harvell what happened and went to clean up. Officer Harvell saw Officer Jones covered in feces. He then looked toward the pod stairs and saw appellant coming down the stairs. Officer Harvell saw no other inmates on the second floor of the pod. After officers restrained appellant, Officer Harvell saw two cups, both with feces on them, on the second floor of the pod.

Thereafter, on August 1, 2012, appellant was housed in the segregation area of Sussex I prison. Eddie Pearson, the Warden of Sussex I State Prison, was making rounds of prison housing units. During the round, Warden Pearson spoke with inmates to learn of any concerns he needed to address. Warden Pearson spoke with appellant at his cell. Appellant told Warden Pearson that he was upset about his treatment during recreation time, and he became more upset while speaking with Warden Pearson. Appellant "cursed at [Warden Pearson] and told [him] to get the 'F' away from his cell."

As Warden Pearson walked away from the cell, he heard "a big commotion" coming from appellant's cell. Warden Pearson looked back and saw appellant's arms sticking through the tray slot of the cell door holding a cup in his hand. Appellant then threw the contents of the cup at Warden Pearson. The feces hit Warden Pearson in the face and on one side. Before Warden Pearson could recover from the first assault, appellant threw a second cup of feces at him. Warden Pearson immediately knew that he had been struck with feces by its smell.

As a result of these two incidents, appellant was charged with two counts of assault and battery of a correctional officer. Appellant's trials on these charges were scheduled for April 24, 2013. On April 22, 2013, the Commonwealth filed a motion to consolidate appellant's trials. The motion stated that appellant was charged with two counts of violating Code § 18.2-57, that justice did not require separate trials, and that "the two offenses are acts that are connected or constitute parts of a common scheme or plan." Appellant objected to the motion, and on April 23, 2013, the trial court heard argument by telephone on the motion. A court reporter was not present to transcribe the argument. The trial court thereafter granted the Commonwealth's motion for joinder of the charges for trial.

Prior to appellant's trial, the trial court stated on the record that the Commonwealth proffered that appellant was charged with two separate charges for felony assault and battery of a

correctional officer, that the offenses took place on July 25, and August 1, 2012, at Sussex I State Prison, and that the two acts, throwing cups of fecal matter on the victims on separate dates, were committed using the same modus operandi. The trial court granted the motion because it found "the offenses meet the definition of a common scheme or plan set forth in both [Rules] 3A:6 and 3A:10." The trial court stated appellant had objected to the trial court's ruling, and had argued, "the two incidences were not part of a common scheme or plan."

At trial, Officer Jones told the jury she recognized appellant's voice as the voice she heard call out her name just before she was hit with feces. On cross-examination, Officer Jones was asked who had administered her oath of office when she first became a correctional officer. She answered that Lieutenant Harrison, her watch commander at that time, administered her oath of office. She also told the jury she had been a correctional officer at the prison since August 2010.

Warden Pearson told the jury that appellant used a cup of the type the prison used to give inmates water, coffee, and juice to throw feces at Officer Jones. He stated appellant kept the cups in violation of prison rules. On cross-examination, appellant's counsel questioned Warden Pearson concerning the protocol used to administer the oath of office for new correctional officers. Warden Pearson testified that new correctional officers are sworn either at the Academy or at the prison. If the oath was administered at the prison, it would be administered by the warden, the assistant warden, or whoever was responsible for "pinning" the new officer.[3] Appellant's counsel then asked, "[I]n order to work for you [correctional officers] have to be sworn, don't they?" Warden Pearson replied, "Correct."

---

[3] "Pinning" is when a correctional officer is officially given the job as a correctional officer.

After the Commonwealth presented its evidence, appellant moved to strike the Commonwealth's evidence as to the felony assault of Officer Jones. Specifically, appellant contended that pursuant to Code § 53.1-1 a correctional officer must be "duly sworn." He argued that because Officer Jones was administered the oath of office by her lieutenant, she was not "duly sworn" pursuant to Code § 49-4[4] and, therefore, she was not a correctional officer. In addition, he argued that to be working in the pod, Officer Jones had to be a correctional officer and because she was not "duly sworn," she was not permitted to be in the pod.

The trial court denied appellant's motion to strike the Commonwealth's evidence. It found that Officer Jones had been working as a correctional officer inside the prison for three years and that "[t]here is a presumption of irregularity [sic]." The trial court also found that Officer Jones was an employee of the Department of Corrections and directly involved in the care, treatment or supervision of inmates in the custody of the Department, as charged in the indictment.

At the conclusion of all of the evidence, appellant renewed his motion to strike the charge of assault on Officer Jones. He argued that pursuant to Code §§ 49-1 and 49-4, Officer Jones was not properly sworn and therefore could not be a correctional officer as defined in Code § 53.1-1. Appellant also addressed the trial court's earlier finding that Officer Jones was an employee of the Department of Corrections and directly involved in the care, treatment or supervision of inmates as charged in the indictment. He argued that because the evidence did not

---

[4] Code § 49-4 provides, in pertinent part,

> Any oath or affidavit required by law, which is not of such nature that it must be made in court, may be administered by a magistrate, a notary, a commissioner in chancery, a commissioner appointed by the Governor, a judge or clerk or deputy clerk of a court, a commissioner or clerk or deputy clerk of the State Corporation Commission, or clerks of governing bodies of local governments.

show Officer Jones was a duly sworn correctional officer, she was not allowed into the interior of state correctional facilities, pursuant to Code § 53.1-30.  As a result, he argued, Officer Jones could not be, and was not, directly involved in the care, treatment or supervision of inmates in the custody of the Department as charged in the indictment.

The trial court denied appellant's motion to strike the Commonwealth's evidence.  It found Officer Jones testified she was sworn as an officer three years earlier and that she had been working inside the correctional facility since she was sworn.  In addition, the trial court noted appellant himself elicited evidence from the warden that only duly sworn correctional officers could enter the pods.  The trial court found, given the presumption of regularity accorded public officials in the performance of their duties, as well as the circumstantial evidence, established that Officer Jones had been duly sworn and that the Commonwealth had met its burden to establish that Officer Jones was a duly sworn correctional officer at the time appellant threw the feces on her.

The jury found appellant guilty of both indictments.  After the jury retired to determine appellant's sentence, appellant asked the trial court "to set aside the verdict as being contrary to the evidence for the same reasons that I stated in my motion."  The trial court denied appellant's motion.

## II.  ANALYSIS

### A.

On appeal, appellant contends the trial court erred in granting the Commonwealth's motion for joinder of his two assault indictments to be tried by a jury in a single trial.  The trial court heard arguments on the Commonwealth's motion to consolidate the cases for trial by telephone on April 23, 2013.  The content of the telephone conference call was not made part of the record on appeal.  The trial court noted prior to the start of trial on April 24, 2013, that the

Commonwealth had moved to join the cases for trial, that appellant objected, and that the trial court had thereafter granted the Commonwealth's motion for joinder. However, the trial court did not state the reasons for its rulings, nor the arguments of counsel, on the record. Without that information, this Court is unable to determine whether the trial court erred in granting the Commonwealth's request to join the two assault charges for trial.

Rule 5A:8(b)(4)(ii) states that "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered." Neither a transcript nor a written statement of facts arising from the conference call on the motion for joinder was filed on appeal. Moreover, comments made by the trial court appearing in the transcript lack sufficient information from which this Court can ascertain whether the trial court erred in its rulings.

Because there is no record of appellant's asserted objections to the motion for joinder and the trial court's ruling during the telephone hearing, appellant's assignment of error is barred for review by Rule 5A:18. Rule 5A:18 requires that

> an objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

As the record on appeal is silent as to appellant's specific objections to the Commonwealth's motion for joinder, and any statements by the trial court regarding its reasons for its subsequent granting of that motion, this assignment of error is barred from our review by Rule 5A:18.

Appellant also contends on appeal that the trial court erred in not striking the felony portion of his charge of assaulting Officer Jones, arguing that Officer Jones was not a duly sworn correctional officer.

On appeal of a motion to strike the Commonwealth's evidence, "'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "'When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" Smallwood v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).

At trial, Officer Jones testified that her lieutenant at the correctional center administered the oath of office to her. Code § 53.1-1 provides that "'*Correctional officer*' means a duly sworn employee of the Department of Corrections whose normal duties relate to maintaining immediate control, supervision and custody of prisoners confined in any state correctional facility." Code § 49-4 states, in pertinent part, that

> [a]ny oath or affidavit required by law, which is not of such nature that it must be made in court, may be administered by a magistrate, a notary, a commissioner in chancery, a commissioner appointed by the Governor, a judge or clerk or deputy clerk of a court, a commissioner or clerk or deputy clerk of the State Corporation Commission, or clerks of governing bodies of local governments.

The Commonwealth concedes on appeal that a lieutenant is not a person empowered to administer an oath under Code § 49-4. However, the Commonwealth urges the Court to consider circumstantial evidence that Officer Jones was properly sworn as a correctional officer within the meaning of the statute. The Commonwealth asserts that the trial court found that Officer Jones,

whether duly sworn or not, was directly involved in the care, treatment, and supervision of inmates as noted in Code § 53.1-1 which defines a correctional officer.  The record shows Officer Jones attended the correctional officer training academy, had worked with the Department of Corrections for three years, and regularly worked in a pod.  The warden also testified that only sworn officers, who have been administered the oath of office at the correctional officer academy or at the facility, could work for the Department of Corrections.  Appellant presented no evidence to rebut the presumption that Officer Jones was a correctional officer within the meaning of the statute.  Accordingly, from the record on appeal, we conclude that Officer Jones was a correctional officer within the meaning of the statute.  We also conclude that the trial court did not err by refusing to strike the felony component of the assault and battery charge relating to Officer Jones.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>